**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
　　　　　bscott@bursor.com

**BURSOR & FISHER, P.A.**
Phil Fraietta (*Pro Hac Vice Forthcoming*)
888 Seventh Ave.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

*[Additional Counsel Listed On Signature Page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIKEMA CLARK, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br>　　　　　　　　　　Defendant. | Case No.　8:20-cv-2122<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Shikema Clark ("Plaintiff") by and through her attorneys, make the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Experian Information Solutions ("Experian").

## NATURE OF THE ACTION

1. This action seeks to redress Defendant Experian's systemic failure to adopt reasonable procedures to ensure the accuracy of consumer credit reports.

2. Defendant is a leading personal credit reporting agency in the nation. Consumers rely on Defendant to accurately report their credit scores because negative credit scores result in long lasting credit stigma which can reduce a consumer's ability to open new lines of credit, obtain housing, and negotiate payment plans for contractual obligations such as utilities and cell phone plans.

3. In 2020, the COVID-19 Pandemic (the "Pandemic") spread across the globe, causing a massive economic crisis triggered by the enactment of Shelter-in-Place Orders across the United States. As a result of the COVID-19 Pandemic, American unemployment swelled from 6.2 million to 20.5 million in the matter of months.[1]

4. As a result of this economic devastation, Congress sought to ease the economic impact caused by the Pandemic by enacting the Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 (the "CARES Act"). The CARES Act suspends the payment, interest accrual, and collections on federal student loans held by the United States Department of Education from March 13, 200 to September 30, 2020.

---

[1] https://www.pewresearch.org/fact-tank/2020/06/11/unemployment-rose-higher-in-three-months-of-covid-19-than-it-did-in-two-years-of-the-great-recession/ (last accessed July 9, 2020).

5. On August 8, 2020 President Donald J. Trump issued an executive order extending the relief offered by the CARES Act until December 31, 2020 (the "Executive Order"). As a result, all student loan borrowers are automatically not required to make payments on their federally owned loans from March 27, 2020 to December 31, 2020.

6. As part of the CARES Act, loan servicers and consumer reporting agencies are required to be reported as "current." 15 U.S.C. § 1681s-2. This has the effect of protecting consumer credit scores because the loans are treated as if payment was timely made. The purpose of the CARES Act's amendment to the FCRA was to ensure that the economic relief provided by the CARES Act did not negatively impact borrowers' credit.

7. However, thousands of FedLoan borrowers' reports have seen a drastic drop in their credit scores.

8. Those drops occurred because Defendant has failed to comply with its obligations under Federal and State Law by reporting the forbearance of federal student loans as a negative remark on consumer's credit reports. This has result in lowering consumer credit scores and jeopardizing consumer's access to credit during a time of increasing financial insecurity. These and other harms could and should have been avoided had Defendant exercised even a modicum of reasonable care.

9. Plaintiff brings this putative class action on behalf of herself and all other similarly situated persons, and seeks order requiring Defendant to immediately halt and correct its unlawful practices and obtain relief on behalf of herself and thousands of other borrowers.

## PARTIES

10. Plaintiff Clark is a citizen of New York who resides in Hempstead, New York Plaintiff Clark's federal student loan payments were suspended pursuant to the CARES Act. On, or about, April 18, 2020, Ms. Clark's credit score dropped by approximately 38 points. This drop was attributed to the erroneous reporting of

her student loans by her student loan servicer, FedLoan Servicing. Subsequently, FedLoan removed any remark regarding the forbearance of Ms. Clark's federal student loans therefore notifying Defendant that the report contained an inaccuracy. However, Defendant has not rectified Ms. Clark's credit score, despite being informed that the remark by FedLoan contained false and inaccurate information regarding her credit history. On September 2, 2020, Ms. Clark's inaccurate consumer report was produced to Universal Credit Services by Experian.

11. Defendant Experian Information Solutions, Inc. is an Ohio Corporation with its principal place of business at 475 Anton Blvd. Costa Mesa, California 92626.

12. Defendant sells consumer reports ("credit reports)" to creditors, landlords, employers, and others seeking to evaluate consumers for credit, housing, employment, and other purposes contemplated in the FCRA.

13. Defendant's credit reports are consumer reports under the FCRA, 15 U.S.C. 1681a(D).

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of the Fair Credit Reporting Act, 15 US.C. § 1681 *et seq*.

15. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this district.

## FACTUAL ALLEGATIONS

16. In response to the COVID-19 Pandemic, Congress enacted the CARES Act. *See* PL 116-136, March 27, 2020, 134 Stat 281. The purpose of the CARES Act was to ease the financial burden of COVID-19. One of the ways it achieved this purpose was by providing relief to borrowers of federal student loans.

17. Among these protections was automatic relief from repayment obligations. Specifically, Section 3513(b) of the CARES Act automatically suspended all payment obligations on loans held by the Department of Education from March 27, 2020 through September 30, 2020. Section 3513(c) halted all accrual of interest during that same period.

18. The CARES Act completely relieved borrowers from their payment obligations from March 27, 2020 through September 30, 2020 (the "COVID Relief Period"). Pursuant to the Executive Order, this relief was further extended through December 31, 2020. Congress recognized that unilaterally changing the payment requirements of student loans and interests rates could result in inaccurate credit reporting. As a result, student loan servicers, such as FedLoan Servicing, are required to report the "credit obligation or account as current." 15 U.S.C. 1681s-2(a)(1)(F)(ii)((I).

19. Further, the CARES Act requires the Secretary of Education to "ensure that, for the purpose of reporting information about the loan to a consumer reporting agency, any payment that has been suspended is treated as if it were a *regularly scheduled payment made by a borrower.*" § 3513(d).

20. Under any reasonable reading of the CARES Act, student loan borrowers who do not pay their federal loans during the COVID Relief Period are "current" on their obligations. Further, no interest is accruing, therefore the loans should not reflect an increase in the amount of debt during this period. As a result, any consumer report that reports student loans as anything other than "current" is patently inaccurate.

//
//
//
//
//

21. On June 16, 2020 the Consumer Financial Protection Bureau ("CFPB") warned creditors and credit reporting agencies that consumer accounts should not be reported as in forbearance "if the accounts have not been placed into forbearance." [2]

22. Further, the CFPB stated that "a special comment indicating that a consumer with an account is impacted by a disaster or that the consumer's account is in forbearance" is not CARES Act compliant.[3]

23. On June 19, 2020, in response to surging complaints, the head of the CFPB urged creditors and credit reporting agencies to comply with their "pandemic-related disclosure and reporting obligations."[4]

24. Despite these numerous warnings, Defendant, rather than doing its due diligence as required by the FCRA, improperly reported thousands of federally owned student loans as being in forbearance or accruing interest. This resulted in thousands of borrowers suffering a decrease in their credit score, when no payment was due on their student loans

25. When Plaintiff Clark procured her consumer report from Defendant on, or around June 30, 2020, the report Plaintiff received indicated that her credit score had dropped by approximately 38 points. Subsequently, a remark appeared in Plaintiff's credit history stating that a remark by "FedLoan Servicing" had been removed from the report. Upon information and belief this remark improperly reported that Plaintiff's U.S. Department of Education owned loans were "affected by natural disaster" rather than "current." Ms. Clark's credit score did not adjust to reflect removal of the remark.

---

[2] https://files.consumerfinance.gov/f/documents/cfpb_fcra_consumer-reporting-faqs-covid-19_2020-06.pdf (last accessed Sept. 18, 2020).
[3] *Id*.
[4] https://www.law360.com/assetmanagement/articles/1284877 (last accessed July 13, 2020).

26. Plaintiff Clark's inaccurate consumer report was provided to third parties on several occasions. On July 1, 2020, Plaintiff's consumer report was produced to Discover Financial Services. On July 6, 2020, Plaintiff's inaccurate consumer report was provided to US Small Business Administration ODA. On approximately September 2, 2020, Plaintiff's consumer report was provided to Universal Credit Servicing by Experian.

27. Defendant's reporting was patently incorrect and inaccurate. Plaintiff's student loan payments was suspended and FedLoan Servicing and Defendant were required to report all federally owned loans as current. However, Defendant did not report all federally owned student loans as current, causing student loan holders, including Plaintiff, to suffer a diminution in their credit score.

28. Plaintiff Clark's consumer report creates a materially misleading impression regarding her creditworthiness because Plaintiff Clark suffered a severe approximately 38 point diminution in her credit score as a result of Defendant's credit scoring models failing to properly account for the fact that the CARES Act suspended payment obligations and interest accrual on student loans due to the COVID-19 Pandemic.

29. Credit scoring models are algorithms which generate a numeric score based on data contained in a consumer's credit report. Based on the algorithm's specifications, certain credit events, such as payments, account closures, defaulted payments, and liens, can negatively or positively affect a consumer's credit score.

30. Credit scores are used by financial institutions, creditors, and other users of credit scores to evaluate consumers for credit, housing, insurance, employment, utilities, and numerous other purposes.

31. Defendant failed to adjust its scoring algorithms to account for relief provided to borrowers under the CARES Act.

32. Rather than treating the suspension of borrowers' payment obligations as a score-neutral or score-positive event, the algorithm used by Experian treated the relief afforded to federal student loan borrowers' as a negative event.

33. Defendant's scoring algorithm therefore caused a precipitous, sudden, and predictable drop in the credit scores of federal student loan borrowers whose loans were serviced by FedLoan Servicing.

34. The drop was unjustified. Defendant had zero factual support for the drop in credit scores. The borrowers whose scores dropped had done nothing differently than they had in the past. If anything, these consumers were a better credit risk than they would have been if student loan relief had never been offered.

35. As a direct and predictable result of the failure of Defendant to adjust their scoring model, thousands of Americans' credit scores dropped as soon as the credit reporting agencies began to inaccurately report federal student loans as being in forbearance or accruing interest.

36. Had Defendant's credit scoring model been properly adjusted to account for CARES Act loan relief, the model would have ensured that borrowers' with loans held by the U.S. Department of Education would experience no change in their scores, or experience an increase in their scores.

37. In the realm of consumer debt and consumer reporting, a notation of forbearance or interest accrual is a red flag. Forbearance implies that the borrower is unable to meet the terms of the loan as originally agreed, and that the borrower has a diminished present capacity to make payments and will face those obligations on an ongoing basis in the future. Similarly, interest accrual indicates a reduction in borrowing capacity, increasing the amount due.

38. The impact of Defendant's reporting of thousands of FedLoan student loan borrowers during the COVID-19 Pandemic when all federally owned student loans were to be reported as current during the COVID Relief Period, was immediate, sweeping, and devastating.

39. For student loans serviced by FedLoan, borrowers' credit scores dropped immediately and significantly.

40. Defendant's automated scoring algorithm treated non-payment pursuant to the CARES Act as derogatory items that negatively impact the consumers' creditworthiness.

41. Defendant's conduct was willful and reckless because Defendant was on notice that, pursuant to the CARES Act, federally owned student loans were required to be reported as "current." Defendant was aware of which student loans were impacted by the CARES Act because all student loan accounts serviced by FedLoan Servicing ("FedLoan") – as indicated by the company name – are held by the U.S. Department of Education. Thus, any report to the contrary on "FedLoan Servicing" tradelines should have placed Defendant on alert that they were reporting patently incorrect information. Moreover, despite numerous warnings that student loans should be reported as "current," and that credit reporting agencies and creditors should comply with their CARES Act obligations, Defendant did not do so. It was objectively unreasonable for Defendant to continue reporting inaccurate information for months after enactment of the CARES Act.

42. Even cursory attention to the information servicers were reporting should have alerted Defendant to the gross and sweeping nature of its misreporting, and the devastating and predictable impact their erroneous reporting would have.

43. Rather than implementing reasonable procedures to ensure they would not compound the financial impact of COVID-19 on thousands of Americans, Defendant instead continued with business as usual, relying on antiquated systems and automated processes which failed to account for changes required by the CARES Act.

44. Defendant had a myriad of existing options available to it that would have allowed them to report federal student loans in a fashion that would have preserved borrowers' credit.

45. Defendant could have easily reported accurate credit information using existing tools and procedures. However, Defendant failed to do so.

46. Defendant should never have reported federal student loans as anything other than "current." In particular, once FedLoan caught the erroneous report, Defendant should have corrected credit scores to provide an accurate report.

47. Due to the CARES Act, Defendant knew, or should have known, that FedLoan Servicing was inaccurately reporting student loan payment history. However, months after the CARES Act went into effect, Defendant failed to take appropriate steps to ensure that the student loan information provided was accurate.

48. Further, Defendant not only misreported the status of FedLoan federal student loans, they participated in incorporating those false reports into its credit scores. Numerous consumers' credit scores dropped significantly, as soon as Defendant incorporated FedLoan's inaccurate reporting into its database.

49. A sudden drop thousands of credit reports relating to FedLoan's reports should have also alerted Defendant of its reporting errors. Yet, this clear signifier of erroneous reporting garnered no correction to its reporting.

50. Defendant's actions have effectively counteracted the relief offered to federal student loan borrowers under the CARES Act. Rather than improving borrowers' financial status and their ability to acquire additional credit, Defendant's conduct has been to borrowers' detriment.

51. As a result of these actions, Defendant violated the FCRA by failing to employ reasonable procedures to ensure maximum credit accuracy. *See* 15 U.S.C. § 1681e(b). Had Defendant properly reviewed the information FedLoan furnished to it, Defendant would have realized the information was inaccurate.

//
//
//
//

## CLASS ALLEGATIONS

55.  Plaintiff seeks to represent a class defined as:

> All residents of the United States whose U.S. Department of Education loans were inaccurately reported by Experian while held in suspension due to the COVID-19 Pandemic.

52.  Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number are in the thousands. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

53.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to: (a) whether Defendant violated the FCRA by failing to follow reasonable procedures to assure maximum possible consumer report accuracy; (b) whether any such violations were willful; and (c) the proper measure of damages.

54.  The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to follow reasonable procedures to ensure maximum possible consumer report accuracy.

55.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

56.  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class

Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
## 15 U.S.C. § 1681e(b)
## (On Behalf Of The Class)

57. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

58. Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the records it reported.

59. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

60. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's

right to privacy, because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information. The FCRA also imposes duties on the sources that provide credit information to credit agencies, called "furnishers."

61. Defendant is required to use reasonable procedures to ensure maximum possible accuracy when preparing consumer disclosures and willfully and/or negligently failed to do so.

62. Defendant acted in negligent, deliberate, and reckless disregard of its obligations and rights to Plaintiff and Class Members under 15 U.S.C. § 1681e(b). Defendant's negligent and willful conduct is reflect by, *inter alia*, the following:

   a. Defendant inaccurately reported the status of Plaintiff's and other Class Members' federal student loans;

   b. After learning about the inaccurate information furnished by FedLoan Servicing, Defendant continued to include inaccurate information in its reports, including, but not limited to, in the credit score itself, rather than correcting the inaccurate reports; and

   c. By adopting a policy of failing to review information from its furnisher, and of failure to retract such information, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

63. Plaintiff and Class Members suffered damages caused by Defendant, including ongoing credit and other financial harm.

64. Plaintiff and the Class are entitled to actual damages or statutory damages of not less than $1000 and not more than $1000 per individual for this violation. Plaintiff and the Class are also entitled to punitive damages, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed class the following relief against Defendant:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, statutory, actual, and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

C. Award Plaintiff and the Class their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees; and

D. Grant any and all such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues so triable.


Dated: November 3, 2020           **BURSOR & FISHER, P.A.**


By: */s/ Brittany S. Scott*
    Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
       bscott@bursor.com

**BURSOR & FISHER, P.A.**
Phil Fraietta (*Pro Hac Vice Forthcoming*)
888 Seventh Ave.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**LAW OFFICE OF BASSMA ZEBIB**
Bassma Zebib, Esq. (State Bar No. 276452)
8616 La Tijera Blvd. Suite 303
Los Angeles, CA 90045
Telephone: (323) 406-0666
Facsimile: (323) 285-5566
Email: bassma@zebiblaw.com

**BARBAT MANSOUR SUCIU & TOMINA PLLC**
Nick Suciu III (*Pro Hac Vice Forthcoming*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nicksuciu@bmslawyer.com

*Attorneys for Plaintiff*